IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G&G CLOSED CIRCUIT EVETNS, LLC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 11-cv-03709 |
| | ) |
| SEAN FLYNN, indv. and d/b/a/ K.T. MAE'S | ) |
| INC. and K.T. MAE'S INC. | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion for prove-up. For the reasons explained below, the Court awards the sum of $7,757.75 in statutory damages, enhanced damages, attorneys' fees, and costs, and enters a final default judgment against Defendants in that amount.

**I.  Introduction**

Plaintiff G&G Closed Circuit & Events, LLC., Inc. ("G&G") filed this action alleging that Defendants Sean Flynn, individually and d/b/a K.T. Mae's Inc., and K.T. Mae's Inc. knowingly and willfully violated certain provisions of the Communications Act of 1934 ("Act") (47 U.S.C. § 605) and the Cable Communications Policy Act of 1984 (47 U.S.C. § 553) by unlawfully intercepting and exhibiting the "Strikeforce: Lawler vs. Shields" match on June 6, 2009. On August 29, 2011, this Court entered a default judgment against Defendants and set the matter for prove-up. Plaintiff has filed a memorandum of law, an affidavit, and other documents in support of its request for statutory and enhanced damages, costs, and attorneys' fees under the

Act and seeks the entry of an award against Defendants.[1] The amount of statutory damages is committed to the discretion of the Court. In order to arrive at an appropriate sum to award as damages, the Court has reviewed analogous cases.

## II.     Analysis

The background facts of this case, except for those relating to damages, are taken from the allegations of Plaintiff's complaint and are deemed admitted as a consequence of Defendants' default. See, *e.g.*, *Black v. Lane*, 22 F.3d 1395, 1397 n.4 (7th Cir. 1994). Plaintiff has established that it paid for and was thereafter granted the exclusive nationwide television distribution rights of Strikeforce. [1 at 3]. For a fee, commercial establishments could legitimately sublicense the match and publicly exhibit the program to patrons within their respective establishments (namely hotels, racetracks, casinos, bars, taverns, etc.). [1 at 3].

Quite understandably, Plaintiff wishes to enforce its distribution rights and to ensure that only those who have paid actually gain access to the program. Additionally, Plaintiff expended substantial sums of money marketing, advertising, promoting, administering and transmitting the Strikeforce match to its customers. [1 at 3]. To ensure that only legitimate sub-licensees receive the program, Plaintiff retains auditors to visit commercial establishments to determine whether the program is being exhibited without proper authorization. Plaintiff here has submitted the affidavit of one such auditor, who avers that he entered K.T. Mae's at 9:45 p.m. on the night of the event in question and observed a total of eleven televisions displaying the Strikeforce match including two wall-mounted projection screens approximately ten feet in size. [12-1]. The

---

[1] The imposition of liability is proper against both the corporate Defendant (K.T. Mae's Inc.) and the individual Defendant (Sean Flynn) because a corporate officer "'who has the ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception].'" *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

2

auditor counted between 32-36 people in the establishment during the ten minutes he was inside of Defendant's establishment. [12-1]. As a result of Defendants' default, they are deemed to have unlawfully intercepted the match and shown it to their patrons and to have done so willfully and for purposes of direct or indirect commercial advantage or private financial gain.[2] See *Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

Plaintiff alleges that Defendants violated 47 U.S.C. §§ 553 and 605. However, Plaintiff may not simultaneously pursue relief under both sections of the Act, because they target two distinct types of piracy. See *United States v. Norris*, 88 F.3d 462, 468 (7th Cir. 1996). Plaintiff's complaint, brief, and affidavit support a conclusion that Defendants intercepted, without authorization, a transmission of the Strikeforce match and broadcast it to its patrons. The record contains no allegations or evidence substantiating the nature of the transmission (i.e., transmission over a cable system or satellite broadcast) that was intercepted by Defendants. Whether § 553 or § 605 applies depends on the point at which the alleged interception occurred. The Court concludes that although the precise means of transmission has not been determined, under the circumstances of this case, where Plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of Defendants' failure to appear or defend in this action, Plaintiff should not suffer the resulting prejudice. In any event, based on the circumstances in this case, the practical impact of which statute applies is nil; the Court's

---

[2] While it is impossible without discovery or an admission from Defendants to determine what method Defendants used to access the satellite signal, it is logical to conclude that they must have used an illegal satellite receiver, misrepresented their business establishment as a residence, or engaged in "mirroring" by taking a legitimate receiver from a home to the business establishment in order to intercept Plaintiff's broadcast.

calculation of damages fits within either scheme. Thus, for the ease of discussion, the Court assumes that Plaintiff, as it has in prior cases, pursues relief under § 605 and has established through its complaint, affidavit, and memorandum of law, combined with Defendants' default, a violation of that statute.

Under Section 605(a), a claimant may elect actual or statutory damages pursuant to Section 605(e)(3)(C)(i). Plaintiff has elected statutory liquidated damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the Court.[3] Plaintiff also seeks enhanced damages for willful violations under Section 605(e)(3)(C)(ii).[4] That section permits enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. See, *e.g.*, *Kingvision Pay-Per-View, Ltd. v. Scott E'S Pub., Inc.*, 146 F. Supp. 2d 955, 959-61 (E.D. Wis. 2001). Finally, under Section 605(e)(3)(B)(iii)[5], Plaintiff has requested an award of attorneys' fees and costs in the amount of $1,757.75.

The Court turns first to Plaintiff's request for statutory damages. As this district has previously noted, "[w]hen the number of patrons at defendant's establishment is known, most courts award damages under [Section] 605 based on the number of patrons." *J & J Sports*

---

[3] Under Section 605(e)(3)(C)(i)(II), an aggrieved party "may recover an award of statutory damages for each violation of subsection (a) . . . in a sum not less than $1,000 or more than $10,000 as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

[4] Section 605(e)(3)(C)(ii) provides that:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).

[5] Section 605(e)(3)(B)(iii), the court "shall direct the recovery of full costs, including awarding attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

*Production, Inc. v. Ramirez*, No. 08 C 3354, Minute Order at 1-2 (N.D. Ill. Sept. 18, 2008) (citing cases and basing award on baseline of $55 per patron); see also *Time Warner Cable*, 77 F. Supp. 2d at 489-90. Applying that sensible approach, on the date in question, the auditor observed a maximum of 36 patrons at K.T. Mae's, resulting in a total statutory award of $1,980.00, which the Court, in its discretion and consistent with the statute, increases to $2,000.

In regard to enhanced damages, as noted above, the Court has concluded that Defendants' violation was willful within the meaning of the Act, because "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable*, 77 F. Supp. 2d at 490. The Act does not provide further guidance, but simply sets forth a maximum recovery and otherwise leaves the matter to the discretion of the Court. In considering how much to award in enhanced damages, courts have looked to a number of factors, including: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. See *J & J Sports Production, Inc. v. Ramirez*, No. 08 C 3354, Minute Order at 2 (citing *Kingvision Pay-Per-View, Ltd. v. Rodriguez*, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). In connection with those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense). See, *e.g.*, *Garden City Boxing Club, Inc. v. Luis Polanco & Luischia Restaurant Corp.*, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); *Kingvision Pay-Per-View*, 2003 WL 548891, at *2.

The record before the Court does not establish that Defendants are repeat offenders or that they advertised the event. Further, the record does not establish that Defendants collected a

cover charge on the night in question. The auditor's affidavit establishes that the venue was showing other programs on several other televisions which indicates that the Strikeforce match was not the sole entertainment on the night in question. With *J & J Sports Production, Inc. v. Ramirez* as a guide, the Court awards an additional $4,000 in enhanced damages, a figure derived from the increased number of patrons in the establishment but controlling for the lack of advertising or a cover charge. *J & J Sports Production, Inc.,* No. 08 C 3354, Minute Order at 2 (citing cases and imposing $4,000 in enhanced damages where fourteen patrons were present).

Finally, the Court has reviewed the materials submitted in support of Plaintiff's request for $1,757.75 in attorneys' fees and costs. The affidavit submitted only details attorney's fees in the amount of $1,343.75 and expenses in the amount of $414.00, for a total of $1,757.75 in attorneys fees and costs. The Court finds the amount in the affidavit well supported and reasonable in the circumstances.

**III.    Conclusion**

For the reasons stated above, the Court enters a final default judgment for Plaintiff and against Defendants, jointly and severally, in the amount of $7,757.75.

Dated:  October 19, 2011

Robert M. Dow, Jr.
United States District Judge